all right, Mr. Wall, we're ready when you are, sir. Thank you, Your Honor. May it please the Court. This case has got some interesting twists to it that I've not seen before in any discrimination claim. The first one is, is that what is embraced by the scope of the charge, Ms. Phillips, as you know, filed her charge September the 6th of 2011 after she had been placed on a performance improvement plan that was, our position is, deliberately shortened by the defendant. Then after she filed her charge and complained of discrimination, she was ultimately terminated about a month and a few days later, November the 7th of 2011. Then after she filed her charge, her lawyer wrote to the EEOC and explained to them that she had been discharged from her work, and then it rocked its way through the EEOC, and then ultimately there was a position statement filed by the respondent or the defendant in March of 2014. And then, or excuse me, 13. And then there was another year and a month that elapsed during the investigative process. The defendant's position is, or the appellee's position is, is that she did not exhaust her administrative remedy with regard to sex discrimination and retaliation, although she had checked the box of sex discrimination, and didn't exhaust retaliation because she didn't include the actual discharge in the charge. But the charge clearly states that she had told, or was stating, that she felt as though this performance improvement plan, which was given to her on August the 22nd, was deliberately shortened so that she would fail and lose her job. It also mentioned the attorney who had written them a letter June 1st, 2011, which she had done because they were not doing their investigation with regard to the allegations of sex harassment. So clearly, I think even more importantly because of the Court's recent decision in Jacobs, the position statement lays it all out, the scope of the investigation. All right. So for purposes of this moment, what's your main thrust? There's a lot going on in this file, to put it mildly. Oh, my. But, I mean, what's the main thrust of your argument? District Court had a 40-page . . . I mean, it went out on summary judgment. District Court had a 40-page memorandum of opinion, which is somewhat unusual for a judge to write that much. But putting aside that, I mean, given all these weaves and turns, what's your principal thrust for us this morning? We left it on for oral argument. Is it her original claim? Is it the retaliation, the non-exhaustion? What's the best path for you to get relief for your client? We think clearly she exhausted her administrative remedies, so she should have been barred from pursuing . . . Exhausted on which claims? Sex discrimination, Your Honor. Retaliation. Sex discrimination regarding what? Her discharge. Discharge. And retaliation regarding the PIP? The PIP and the ultimate discharge. Okay. Okay. Well, I'm just trying to hone you in. We all read the briefs and we've read all the stuff, so I don't want you to, you know, stay mined too deeply in all that and we never get to sort of the ultimate point you're trying to leave us with. And for some reason, the trial court concluded or stated that the pleading was insufficient to raise the issue of the retaliation following the retention of the attorney. So somehow, the sworn declarations that they never knew, which are clearly false, that she had retained an attorney when they were putting her on this performance improvement plan, really gets to the issue of pretext. Clearly. But she clearly established a prima facie case. She's qualified for the job. She's a member of a protected class. She suffered adverse action. She was replaced by a male. And then there's comparator evidence, too, about Mr. Beddingfield and Mr. Corcion, Mr. Hedden, the others. But the principal prima facie case came out with her having been replaced by Mr. Hedden and then Mr. Corcion and the other individual who they mistakenly identified as the male that took over her position. Past that point, then you get to this issue of did they articulate a legitimate, non-discriminatory reason? And I would suggest that under the Patrick V. Ridge case, no. Because first they said it was performance. Mr. Rainforth, who was allegedly one of the decision makers, said that it was because she didn't close the Bay Derm deal. I'm sorry, I didn't hear. Bay Dermatology. Yeah, it was a huge contract, Your Honor, that Ms. Reber-Phillips had been working on for some time. And for reasons unknown, although they take insurance of any kind and character, in this particular contract that was going to be a huge one for the company, they wouldn't take insurance of all kinds. But they always do. And the people that were involved in this process were the same individuals who had been involved in this conference call about what had gone on with her when she got arrested. The problem with this case from the defendant, our position is, is that they never really articulated a legitimate, non-discriminatory reason because you can't determine where the truth starts and where it ends. First it was performance. Then it was she falsified an expense report on a day that she was allegedly at court. Then it was because she didn't close the Bay Derm deal. Then it was, well, she also somehow downloaded a virus to her computer when she was on a medical leave. But, of course, their own IT person proved that false. Then the next thing was, is she was, she didn't disclose this conflict of interest because her roommate was somebody that worked at one of these dermatology clinics. That's how she got the job. They knew it hiring her up front. Then there was also the assertion that they, sorry, oh yeah, gee whiz. Ms. Calabro one time said that she was unprofessional in her dress. And then I was asking her about, I'll retract that statement. And then all of a sudden this memoranda comes out with all these things in it about this criminal activity. And they don't ever know who the decision maker was with regard to the decision to terminate her job. First Ms. Calabro said it was a collaborative effort. Then Mr. Rainforth, and she said that she had some input into the termination memo at one point. Then Mr. Rainforth says that it was prepared by human resources. Ms. Duncan says that Well, let's get, let's step back a bit from all of that, which, you know, about which there may be fact issues. As I understand it, what the court held was that she did not allege sex discrimination into the EEOC as a basis for her being fired. She just didn't do it. She checked the box six. Any facts related to sex discrimination? She talked about how it was a good old boy. I mean, she didn't, she didn't allege her complaint though, right? Because she had, the only EEOC charge she filed, isn't this correct, was the one in September when she was still on the PIP plan. Yes, Your Honor. So she hadn't been fired. True. So she did not amend her charge to say she had been fired because of her sex. She did not technically file that. So I think to exhaust that claim, you have to show that her subsequent firing is a natural outcropping of the, of the retaliation claim. And I think it clearly is there. I don't think we have a lot of that effect, do we? Well, uh, well, the Gupta decision is, is one. You know, the retaliation for filing the charge naturally ensued following that because she filed her charge September the 6th and she's fired November the 7th. You say Gupta? Yes. Gupta v. East Texas State University? Right. That was in, um... And then also, Your Honor, your decision in the, um, Lufkin Industries case also assists us in that regard. Um... McClain v. Lufkin? Well, that was a class action. Yes. But it dealt with this exhaustion issue. Uh, and what naturally springs from what is provided to the EEOC and... Right. But it doesn't mean you can just, you know, you file an EEOC charge and then six months later, in this case, it was two months later, you get fired and, you know, you can't just transform your EEOC complaint. So... Well, I think if it's within the scope of the investigation is what's important. As I read the decisions. Okay. Well, I'll take your word for it. And then on the, uh, complaint on the, uh, uh, on the, uh, retaliation, uh, I believe the court found that you didn't allege that in your complaint in the Federal District Court. We did. We clearly did. It was a short, plain, concise statement. We said that they, she had been discriminated against on the basis of her sex and retaliated for opposing unlawful employment practice. And that's in paragraphs 7 through 12, I believe, and 15 through 20 of the record on appeal. Well, but you didn't say it was because of your reduction in sales territory. That was in there as well. But we... You didn't complain overtechnically. As narrowly as possible is unfortunately what happened. But we also had in there that it... In, but not limited to, the following... Because... Rule 8. Short, concise, plain statement. And I was trying to find my old federal form book that I recall vaguely that there used to be about a one-page or two-page complaint. Well, the Supreme Court sort of updated that. Yes, I know. And that's the other issue here. There was no 12B issue, no 12B practice at all in this case. There was no motion to dismiss. There was no motion for more definite statement. There was no complaint about the pleading until we caught them in a... of fact, which was whether or not they knew she had retained an attorney when they put her on the performance improvement plan. And they all denied it in their depositions. They denied it in declarations. We pointed it out. And then they moved to amend their summary judgment and claimed we misremembered, although there was clearly email communication about what to do about this lawyer. So the evidence... How can you base the decision, grant a summary judgment, I was so perplexed, upon the declarations of people who have been proven not to be forthright and insult to injury, indirectly, Ms. Duncan, in this criminal investigation that occurred, claims that the mugshot thing, she looked at it. In my preparation, I expanded those exhibits. Those documents didn't exist. And the record references there... 1881 is where Ms. Duncan maintains that the whole issue of the mugshot thing came up. And when you examine those particular exhibits closely, I think it's 1888 forward, when you zoom in on them, you can see the one was not even available until November 7, 2008, the picture. The day they'd already fired her is when it came up. Thank you. All right, thanks, sir. You've reserved your vote time. All right, we'll hear from Cara Life-Santis. Mr. Quaddaris, is that... Yes, it is, Your Honor, thank you. May it please the court. Your Honors, the district court did an admirable job in slicing and dicing and navigating its way through the many twists and turns of this case. And, Judge Stewart, in a moment, I'm going to answer the question that you posed to Mr. Wall about what is the main thrust of this case. But I propose to you that, the main thrust of this case, in a case which is multifaceted in many ways, can be cut through like a hot knife through butter. And that is, what you had in that original charge that was filed on September 6, 2011, was a garden-variety sexual harassment case in which she complained about her supervisor allegedly spreading rumors about her sex life, in which she complained about... I'm sorry, not her supervisor, but a co-worker, and that a co-worker allegedly had propositioned her a couple of times, once in a cab, once in a hotel room. And what Judge Lindsey did in this case is he looked at the allegation of sexual harassment and said that that's not severe or pervasive and held that her claim of sex harassment was not, as a matter of law, didn't have any merit to it. And she's abandoned that on appeal. That was not... Not only was that not brought up on appeal or briefed on appeal, so not only did the district court get it right, but even if the district court got it wrong, Judge Jones, that was not briefed on appeal, and therefore that's been waived. So that's what that charge was all about. The charge... The rest of this case has to crumble because what was in that charge was decided by the district court and not appealed. Now, what Mr. Wall and my colleague is trying to say was that, well, she was terminated two months later, but that wasn't in the charge. That was never... The charge was never supplemented. The charge was never amended. And what the cases say is, on exhaustion, is that we start with what's in the charge, what's in the four corners of the charge, and then look a little bit beyond that to see what the scope of the EEOC investigation was. She did say something about the performance improvement plan in her charge, didn't she? She did say something about the performance improvement plan in her charge, Your Honor, but understand what was in that performance improvement plan started actually before... The things that were going on in her performance improvement plan started before she even filed her chart or before she notified the company of her sexual harassment complaint. So what? Well, what she's trying to say... I think what they're trying to say, Your Honor, is that that PIP, that performance improvement plan, was given to her... It's pretextual, but the point is that you can still allege it, and I guess then you have to extend from that, because she never updated her charge. You have to extend from that, a PIP, to the fact that she was fired. Well, I agree. I do think that you have to take that leap, but there were two opportunities that my colleague has brought out to you that I think he's trying to say that put the termination into play, if you will. And that first opportunity was when the company wrote a position statement to the EEOC in March of 2013. And if you look carefully at that position statement, and it is in the record at 2531 through 2535, what the company was doing was responding to her allegations that the PIP was put in place and her allegations that there was sexual harassment going on. Yes, they did at the end of the letter inform her that she had been term... They informed the EEOC that she had been terminated, but they certainly weren't responding to an allegation that she had been terminated in retaliation or in discrimination. They were just informing the EEOC of what was going on. So what else in the record shows of what was going on with respect to the EEOC investigation? The second thing that's in the record, and by the way, the patent case that was sent to you the other day by my colleague, in that case, there was an intake questionnaire, and there's no intake questionnaire in the record in this case. But the second thing that's in the record is an email that Attorney Kennard, who at the time was the attorney for Ms. Phillips, I believe it was in May of 2013, sending an email to the EEOC. Again, he was... Mr. Kennard was responding to some of the questions of the EEOC, and at the very end of the email, he said, by the way, she was terminated. Again, he's notifying the EEOC that she had been terminated, but nowhere in there does he ask the EEOC either to supplement the charge or to amend the charge. If that was going to be part of the charge, it was not signed by the plaintiff in this case, Phillips, under oath. No copy of that email was ever sent to the company. No copy was ever sent to the company's lawyer, and Title VII requires that the company and the lawyer be put on notice of what's in the charge, and that was never done. So the charge itself never put either the court or Morocco on notice that she was alleging termination as part of either discrimination under Title VII or retaliation under Title VII. So, again, the main thrust of this case, to answer your question, Judge Stewart, is the charge and also the complaint. So let's go on to the complaint. All right. The complaint itself... ...alleges... Well, first of all, let me just say, it's... The case law says, well, you know, you can't get somebody for having an imperfect complaint. This is not an imperfect complaint, Your Honors. This is an ineffectual complaint. It fails for two reasons. First of all, it states claims that were never exhausted in the first place, and then second, and I think more importantly, it omits facts or allegations that tie to the claims, OK? You look at the record on appeal in the complaint, it's right around pages 15, 17, 18 and 19. But the paragraph 7 lists the legal basis, the legal basis, not the factual basis, for her cause of action. She does state one fact in paragraph 7, and that is that she was terminated on 2000... I'm sorry, on November 7, 2011. And as to this allegation that's in the complaint, there's no question that that was ever brought up before the EEOC in the charge or anything else. So she failed to exhaust her remedies with respect to this allegation. Paragraph 8 simply states the circumstances of Phillip's work and where she worked and where she lived. Paragraph 9 amplifies the claim of sexual harassment. Again, paragraph 10 amplifies more the claim of sexual harassment. Paragraph 11 alleges a hostile work environment for allegedly reporting the harassment to Morocco and reducing her sales territory. But neither reduction in her sales territory nor this quote-unquote hostile environment in retaliation was ever in the charge. In fact, I'll add this, that when Judge Lindsey went through the allegation of a hostile work environment in retaliation for complaining about harassment, Judge Lindsey found that there was no evidence of a hostile work environment either. So in this case, the district court did not impose any form of heightened pleading requirement. It merely analyzed the complaint for what was presented to the court and correctly concluded that the plaintiff never alleged any facts to plead a claim for wrongful termination as a consequence of the alleged retaliation. The counsel opposite says, you know, it's a, you know, it's a federal complaint. I mean, I'm following you, but that, you know, a simple plain statement is what was required and, you know, essentially either as part of or inferred from the other claims that this wasn't a 12B6 proceeding, you know, dismissing a stated claim, but indeed a summary judgment, et cetera, et cetera. So his argument, I think, was that viewing the complaint, quote, overly strictly fits into your argument as opposed to plain simple statement and given the way the complaint was alleged. So, I mean, I guess you've already said it, but I understood his response. Three answers to that, Your Honor. First of all, the district court, record on appeal, page 2841, said that the district court's not clairvoyant, can't read into the complaint what's not there. I understand it. Rule 8A2 requires a short and plain statement of the case, but that same rule also says that it has to show that the pleader is entitled to relief. What you're saying is not that she didn't allege facts, but she didn't allege exhausted facts. Well, both, Your Honor. Well, I understand that, but, I mean, that sort of puts in a different perspective what Judge Lindsey was doing. She wasn't alleging facts relevant to retaliation and termination that she had exhausted properly. That is correct, Your Honor. That is correct. Um, but more importantly, not only is the court not clairvoyant and not only do I think that it was not a short, plain statement of the facts, that she's entitled to relief, but we're forgetting Rule 8D1, which requires that the statement be direct, and I don't think there's any direct statement in there. I really do think that if you read that complaint, it almost requires that you read it alongside a group of tea leaves. You have to read the tea leaves, and courts aren't required to read tea leaves. They're not required to be, um, clairvoyant. Well, I don't think you have to read tea leaves. She's saying that she was fired because she was a woman.  Well, that was never in the charge, Your Honor. That was never in the charge. But that's the point. She was not alleging in her EEOC charge, which is a prerequisite, that she was fired, uh, because of her sex. Right? Well, the only thing that she put in the complaint, Your Honor, was that she was fired November 7, 2011. And she listed... I'm sorry. In her... In her district court complaint. Yes. Okay. Yes. All right. Sorry. But she didn't really tie that fact in the end, to me, the way I read the complaint. She didn't really tie that fact very well into any of the causes of action that she listed in the complaint. Okay. And I think that's where Judge Lindsey said that it's not required to be, uh, clairvoyant. The third point to your question, Judge Stewart, is that yes, it's true. Maraca never filed a 12B6 motion in this case. But more importantly, once that motion for summary judgment got filed, Ms. Phillips never filed a motion to amend her complaint. And after judgment was entered, never filed a motion under Rule 59 for a new trial and for leave to amend her complaint. And I think that's important, too. Because on those cases that are cited in the briefs, in those cases, what's important is that at the trial court below, the trial court, uh, was asked to amend the complaint, and the trial court, part of the error in the trial court was that they didn't... And in this case, no time was the, uh, did Ms. Phillips ever seek to amend her complaint. Um, one other issue that I want to deal with that came up with in my colleague's opening statement, and that is this letter to Russ Farr. Uh, Attorney Kennard, who was the lawyer for Ms. Phillips a long time ago, wrote a letter to Russ Farr dated 6-1-11. And that's in the record at page 25-28 through 25-30. One of the things that occurred in the, in the trial court was that my colleague was so upset that Morocco's, um, management didn't remember that this Russ Farr letter existed. He moved for sanction, um, these, uh, Morocco. That sanction was denied by the magistrate judge. And in that, magistrate Judge Stickney ruled that whether Phillips hired a lawyer is not a core issue in this case. Mr., uh, Mr. Wall, my colleague, wants to make it a core issue, but Judge Stickney said it's not a core issue, and that was never appealed, um, to the Fifth Circuit, Your Honors. That was not appealed. And it's just not a core issue in this case, uh, whether she, whether she had, um, a lawyer or not, um, because Title VII talks about retaliation in terms of what you do, uh, with respect to employment, not with whether or not you hire a lawyer or not. So, I have more time. I'm here to ask you to, uh, affirm Judge Lindsey's opinion and to judge, affirm the, uh, judgment below, but I'm here to ask any question, answer any questions you may have. All right, so you would, uh, without getting into all these other trails, stick with affirming the district court because of the non-exhaustion of the claims, and specifically the non-urging in this complaint that I'm looking at of exhausted claims without ever getting to some or all of that ground, Your Honor. Absolutely, but even if you don't affirm on that ground, Judge Lindsey left plenty of ammunition in that opinion to affirm on other grounds as well because I think everything in that opinion, um, has good legal standing. All right. Thank you, Your Honor. All right, back to you, Mr. Wall. Now, we heard what you said on open about, you know, the trial court reading in the narrowest possible way the, uh, you know, complaint, but looking at it, I mean, it is pretty straightforward, so what's your best take on, uh, the district court's determination that this complaint doesn't allege exhausted claims? We had a paragraph in there that she had pressed her charges with the EEOC, that they had investigated, she filed it within the time prescribed by law, that they issued the notice to write to sue, and that we timely filed suit. It's clearly in the complaint. And we also had in our complaint that they followed a practice of discrimination against a plaintiff because of her sex in violation of 42 U.S.C. 2000E for discriminating against her in the terms, conditions, and privileges of employment, harassing her, retaliating her, and terminating her. And to suggest that it's not exhausted, I guess, Mr. McCarthy, the other lawyer for the defendant, had written the position statement for the respondent. In there, in page 23, no, 2532 of the record, he states respondent denies charging parties allegations of sex discrimination and retaliation. Respondent is confident that it acted in accordance with the law. He goes on to say that after the criticisms, etc., and the receipt of the lawyer letter, which the lawyer letter at the summary judgment stage, after they denied knowing anything about it, became a surprise to them. Now, I have no idea. It certainly wasn't a surprise to them back in 2013. I don't see what relevance that has. I mean, if anything, when a plaintiff when you know that an employee retains counsel, you are going to look at potential action against that employee in a different way. Sure, but there's the cases that talk about that's opposition and participation in the process. Well, I still don't understand how that's any smoking gun to shore up your complaint or the allegations to the EEOC. Well, I think that the jury could easily conclude that they put her on this performance improvement plan because of the lawyer letter. They deny knowledge of the lawyer and they also deny knowledge that she'd ever filed a charge before they fired her. Now, if they know about the lawyer, I think a jury could easily infer they know about the charge too. Period. I mean... They knew about the charge, which was sex harassment or sex... It was based on the way the you know, the propositions in the room were right. Right. But they denied in the summary judgment that they, that the charge any knowledge of the charge, so therefore it could not have motivated their action. Okay. Okay. It goes on to state in here in the position statement about the performance improvement plans, the extensions of it, etc., based on the foregoing noted lack of improvement in job performance and Ms. Reber's failure to make sales compared with the PIP quota requirements the company elected to terminate her employment. That was clearly part of the investigative process of the EEOC that was exhausted because this was written in March of 2013 and it wasn't until May of 2014 that the right to sue was issued. Now the defendant respondent certainly knew it was part and parcel of this whole thing. Never once in here do they mention all of this nonsense about the memo, the performance, the virus in the computer, the conflict of interest, the mugshot nonsense, the records that the law firm got October the 25th of 2011 that were all part and parcel of this investigation that ultimately came into the termination memo. And then when Ms. Duncan was asked after a little bit a lot of trouble, well then who really made the decision to terminate? She says she doesn't know. Could have been and I would suspect probably was in-house counsel. Probably said we're selling the company, get rid of her anyway. Because what else could we do? Alright, thank you Mr. Wall. I think we have your argument. Alright, the case will be submitted.